## UNITED STATES COURT OF INTERNATIONAL TRADE

AA METALS, INC.

                *Plaintiff*,

      v.

UNITED STATES,

                *Defendant*.

Court No. 22-00051

## <u>COMPLAINT</u>

Plaintiff, AA Metals, Inc. ("AA Metals" or "Plaintiff"), by and through its attorneys, alleges and states as follows:

### <u>ADMINISTRATIVE DETERMINATION TO BE REVIEWED</u>

1.    This action seeks judicial review of certain aspects of the U.S. Department of Commerce's ("Commerce") final scope determination issued in response to a covered merchandise referral from U.S. Customs and Border Protection ("CBP"), concerning the antidumping and countervailing duty orders on *Common Alloy Aluminum Sheet ("CAAS") from the People's Republic of China ("China")*. *See* Memorandum from Dana S. Mermelstein, Director, Office VI, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Subject: Antidumping and Countervailing Duty Orders on Common Alloy Aluminum Sheet from the People's Republic of China, Enforcement and Protect Act Investigation No. 7469: Notification of the Final Scope Determination and Response to Covered Merchandise Referral* (Jan. 21, 2022) ("*Final Scope Determination*").

Court No. 22-00051

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(ii) and 516(a)(2)(B)(vi) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(ii), (a)(2)(B)(vi).

3.     Alternatively, the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1581(i)(1)(B), 1581(i)(1)(D) and 28 U.S.C. § 2631(i), in that the action arises out of the administration and/or enforcement of the Customs laws.

## STANDING

4.     Plaintiff is an importer of merchandise that the Department has held to be within the scope of the antidumping and countervailing duty orders in the *Final Scope Determination*. Therefore, Plaintiff is an "interested party" within the meaning of 19 U.S.C. §§ 1516a(f)(3), 1677(9)(A) and 28 U.S.C. § 2631(k)(1).

5.     Plaintiff participated in the administrative proceeding that is the subject of this challenge, and accordingly, has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

6.     Plaintiff is also aggrieved by the challenged agency action and accordingly has standing to bring this action under 28 U.S.C. § 2631(i) and 5 U.S.C. § 702.

## TIMELINESS OF ACTION

7.     Plaintiff commenced this action by filing a Summons on February 22, 2022.   The *Final Scope Determination* was issued on and mailed to interested parties on January 25, 2022. *See* Memorandum from Yang Jin Chun, Senior International Trade Compliance Analyst, AD/CVD Operations, Office VI, *Subject*: *Common Alloy Aluminum Sheet from the People's Republic of China: Scope Inquiry EAPA 7469 – Service of Final Scope Determination* (Jan. 26, 2022).   The Summons was therefore timely filed pursuant to 19 U.S.C. § 1516a(2)(A)(ii) and pursuant to

Rules 3(a)(2) and 6(a) of this Court.  Section 516A(a)(2)(A)(ii) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(vi), the Summons must be filed within thirty (30) days of the date of mailing of the contested determination, and the Complaint must be filed within thirty (30) days thereafter.  19 U.S.C. § 1516a(a)(2)(A)(i).  Thus, Plaintiff's Summons and Complaint are timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(ii), (B)(vi) and USCIT Rules 3(a)(2), 6(a).

8.      Actions commenced under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of the action first accrues.  28 U.S.C. § 1581(i).  Commerce issued its Scope Ruling dated January 21, 2022 on January 25, 2022.  This action is therefore timely filed.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

9.      On November 28, 2017, Commerce self-initiated antidumping and countervailing duty investigations with respect to imports of common alloy aluminum sheet from China.  *See Common Alloy Aluminum Sheet From the People's Republic of China: Initiation of Less-Than Fair-Value and Countervailing Duty Investigations*, 82 Fed. Reg. 75,214 (Dec. 4, 2017); *see also* Memorandum from P. Lee Smith, Deputy Assistant Secretary for Policy and Negotiations, to Gary Taverman, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance, *Subject: Initiation of the Antidumping Duty Investigation of Common Alloy Aluminum Sheet from the People's Republic of China* (Nov. 28, 2017); Memorandum from P. Lee Smith, Deputy Assistant Secretary for Policy and Negotiations, to Gary Taverman, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance,

*Subject: Initiation of the Countervailing Duty Investigation of Common Alloy Aluminum Sheet from the People's Republic of China* (Nov. 28, 2017).

10.     Following Commerce's self-initiation, the domestic industry had the opportunity to comment on the scope established by the *Initiation Memorandum*, but the domestic industry did not submit scope comments.  Rather, the domestic industry only submitted product characteristic comments, proposing product codes capturing the tempers of downstream CAAS products made from re-roll stock established by the Department.  Letter from Kelley Drye & Warren LLP to Dep't of Commerce, *Re: Common Alloy Aluminum Sheet From the People's Republic of China – Domestic Industry's Product Characteristic Comments for Antidumping Questionnaire* (Dec. 18, 2017) at 8 ("Domestic Industry Cmts on Product Characteristics").

11.     During the injury investigation, the International Trade Commission ("ITC") differentiated between re-roll and subject merchandise during its injury determination.  *Common Alloy Aluminum Sheet from China*, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final), USITC Pub. 4861 (Jan. 2019) at I-14 to I-18.  In the ITC's description of the manufacturing process of subject merchandise, re-roll stock is the coiled aluminum alloy sheet resulting from the melting and refining and casting processes, before the sheet is further manufactured into CAAS products through the flat-rolling process and additional processes, including heat-treating, annealing, and/or finishing.  *Id.*; *see also Common Alloy Aluminum Sheet from China*, Inv. Nos. 701-TA-591 and 731-TA-1399 (Prelim.), USITC Pub. 4757 (Jan. 2018).

12.     In November 2018, Commerce published its affirmative final antidumping and countervailing duty determination.  *Antidumping Duty Investigation of Common Alloy Aluminum Sheet From the People's Republic of China: Affirmative Final Determination of Sales at Less-Than-Fair Value*, 83 Fed. Reg. 57,421 (Nov. 15, 2018); *Countervailing Duty Investigation of*

*Common Alloy Aluminum Sheet From the People's Republic of China: Final Affirmative Determination*, 83 Fed. Reg. 57, 427 (Nov. 15, 2018).

13.     On February 5, 2019, the International Trade Commission ("ITC") published a notice of its affirmative finding that an industry in the United States is materially injured by reason of imports of common alloy aluminum sheet from China.  *See Common Alloy Aluminum Sheet From China; Determinations*, 84 Fed. Reg. 1,784 (Int'l Trade Comm. Feb. 5, 2019); *see also Common Alloy Aluminum Sheet from China*, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final), USITC Pub. 4861 (Jan. 2019).

14.     In February 2019, Commerce issued antidumping and countervailing duty orders on common alloy aluminum sheet ("CAAS") from China ("*China CAAS Orders*").  *See Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 Fed. Reg. 2,813 (Feb. 8, 2019); *Common Alloy Aluminum Sheet From the People's Republic of China: Countervailing Duty Order*, 84 Fed. Reg. 2,157 (Int'l Trade Admin. Feb. 6, 2019).

15.     The *China CAAS Orders* cover, *inter alia*,

> The merchandise covered by this order is aluminum common alloy sheet (common alloy sheet), which is a flat-rolled aluminum product having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length, regardless of width. Common alloy sheet within the scope of this order includes both not clad aluminum sheet, as well as multi-alloy, clad aluminum sheet. With respect to not clad aluminum sheet, common alloy sheet is manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association. With respect to multi-alloy, clad aluminum sheet, common alloy sheet is produced from a 3XXX-series core, to which cladding layers are applied to either one or both sides of the core.

*China CAAS Orders* at 2,815, 2,158.

16.     On May 13, 2021, CBP issued a covered merchandise referral to Commerce pertaining to CBP's Enforce and Protect Act ("EAPA") Investigation No. 7469 requesting that

Commerce determine whether certain product imported by AA Metals was subject to the *China CAAS Orders* in accordance with 517(b)(4)(A) of the Tariff Act of 1930, *as amended*, and 19 CFR 165.16   *See Memorandum from Dana S. Mermelstein, Director, Office VI, Enforcement and Compliance, AD/CVD Operations, Re: U.S. Customs and Border Protection Enforce and Protect Act Investigation No. 7468, Common Alloy Aluminum Sheet from the People's Republic of China, A-570-073/C-570-074, Subject: Placement of Covered Merchandise Referral Documents on the Record* (Aug. 18, 2021) ("Covered Merchandise Referral").   CBP was "unable to determine whether the merchandise at issue is covered merchandise due to the third country processing." *Id*. at 4.  CBP's Covered Merchandise Referral requested Commerce to make a scope determination on product meeting two different scenarios.  CBP defined the product of Scenario 2 as follows: "Chinese-origin aluminum sheet of a thickness covered by the scope re-rolled in Turkey to a thickness covered by the scope."  *Id*.  On August 25, 2021, Commerce provided notice of the Covered Merchandise Referral and invited participation from interested parties.  *See Common Alloy Aluminum Sheet From the People's Republic of China; Antidumping and Countervailing Duty Orders: Notice of Covered Merchandise Referral*, 86 Fed. Reg. 47,472 (Aug. 25, 2021).

17.     Texarkana Aluminum, Inc., a U.S. domestic manufacturer and the alleger in the EAPA proceeding, filed an entry of appearance in the scope ruling proceeding.  The Aluminum Association Common Alloy Sheet Trade Enforcement Working Group, comprised of domestic producers Arconic Corporation, Commonwealth Rolled Products Inc., Constellium Rolled Products Ravenswood, LLC, Jupiter Aluminum Company, JW Aluminum Company, and Novelis Corporation, also entered an appearance in the scope proceeding at Commerce.  The Aluminum Association Common Alloy Sheet Trade Enforcement Working group did not file factual information or comments in this scope proceeding.

18.     On September 13, 2021, Commerce issued an initial questionnaire to AA Metals addressing information necessary for Commerce to complete its analysis in the scope inquiry.  *See* Letter from Brian C. Davis, Program Manager, AD/CVD Operations, Office VI, Enforcement and Compliance, to Sandler, Travis & Rosenberg, P.A., *Re: Covered Merchandise Referral Regarding EAPA Investigation No. 7469: Initial Questionnaire* (Sept. 13, 2021).

19.     On September 27, 2021, AA Metals, Inc. and Teknik Alüminyum Sanayi A.Ş. submitted its response to Commerce's initial questionnaire.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum Sheet from the People's Republic of China: Response to Initial Questionnaire* (Sept. 27, 2021) ("Initial Questionnaire Response").  With respect to Scenario 2, AA Metals defined the product as continuous cast coil with a thickness of 3-20 mm, which is considered primary unwrought aluminum (*i.e.*, not a direct chill cast product).  *Id*. at 3.  The Initial Questionnaire Response provided technical specifications of the product at the time of import into Turkey that subsequently underwent further manufacturing by PMS in Turkey and was imported by AA Metals.  *Id*. at 3-4, Exhibit 6.  As part of the Initial Questionnaire Response, AA Metals confirmed that AA Metals and PMS were in no way related and, therefore, AA Metals was unable to provide information related to PMS' business or operations.  *Id*. at 1-2.

20.     On October 27, 2021, Commerce issued a supplemental questionnaire.  Letter from Brian C. Davis, Program Manager, AD/CVD Operations, Office VI, Enforcement and Compliance, to Sandler, Travis & Rosenberg, P.A., *Re: Covered Merchandise Referral Regarding EAPA Investigation No. 7469: Supplemental Questionnaire* (Oct. 27, 2021) ("Supplemental Questionnaire").  With respect to Scenario 2, Commerce requested AA Metals to describe how the Scenario 2 merchandise "exported from Turkey to the United States . . . meet the physical

description of the scope of the {*CAAS China Orders*}" and to provide responses to the following three questions: "(a) Please justify with supporting documents your claim that continuous cast coil is primary unwrought aluminum, despite its thickness indicating that it is aluminum sheet within the description of the scope of the orders.  (b) Please justify with supporting documents your claim that continuous cast coil is primary unwrought aluminum, despite its chemical composition indicating that it is alloy aluminum sheet within the description of the scope of the orders.  (c) Please explain with supporting documents whether primary unwrought aluminum is not alloyed aluminum and is non-scope product, regardless of thickness, shape, and/or chemical composition." *Id*. at 1, 4.

21.    On November 5, 2021, AA Metals responded to Commerce's Supplemental Questionnaire.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Common Alloy Aluminum Sheet from the People's Republic of China: AA Metals Inc. and Teknik Aluminyum Sanayi A.S. – Supplemental Questionnaire* (Nov. 5, 2021) ("Supplemental Questionnaire Response").  In response to question 1, AA Metals provided that "{w}hile the merchandise at the time of export from Turkey meets the physical description alone of the *China CAAS Orders*, the product exported from China to Turkey is non-subject merchandise that has undergone substantial transformation such that the merchandise is Turkish origin for duty purposes." *Id*. at 13.  AA Metals set forth that the Chinese product is non-subject for the following reasons (1) the input is continuous cast coil which is unwrought aluminum which is manufactured by casting without hot- or cold-rolling and (2) a certain temper product is non-subject merchandise. In response to the question regarding continuous cast coil, AA Metals provided information regarding unwrought aluminum.  *Id*. at 17-25.  Additionally, AA Metals provided Commerce with previous Commerce determinations addressing substantial transformation.  *Id.* at 15.

22.     On January 25, 2022, Commerce issued its final scope determination and response to CBP's Covered Merchandise Referral, dated January 21, 2022.  *See* Memorandum from Dana S. Mermelstein, Director, Office VI, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Subject: Antidumping and Countervailing Duty Orders on Common Alloy Aluminum Sheet from the People's Republic of China, Enforcement and Protect Act Investigation No. 7469: Notification of the Final Scope Determination and Response to Covered Merchandise Referral* (Jan. 21, 2022) ("*Final Scope Determination*"); *see also* Memorandum from Yang Jin Chun, Senior International Trade Compliance Analyst, AD/CVD Operations, Office VI, *Subject*: *Common Alloy Aluminum Sheet from the People's Republic of China: Scope Inquiry EAPA 7469 – Service of Final Scope Determination* (Jan. 26, 2022).

23.     In the *Final Scope Determination*, Commerce determined that common alloy aluminum sheet re-rolled by Turkish producer Teknik as set forth in Scenario 1 is not covered by the scope of the *CAAS China Orders*.  *Final Scope Determination* at 1.  Commerce also determined that common alloy aluminum sheet re-rolled by Turkish producer PMS Metal as set forth in Scenario 2 is covered by the scope of the *China CAAS Orders*.  *Id.*

24.     With respect to Scenario 2, Commerce determined that "the aluminum coil exported from China to Turkey is flat-rolled aluminum sheet having a thickness of 6.3 mm or less, but greater than 0.2 mm, not continuous cast coil and unwrought aluminum manufactured by casting."  *Id.* at 8.  Further, Commerce stated that "AA Metals' supplemental response indicates that a thin wrought aluminum sheet is produced via a rolling process."  *Id.* (citing AA Metal's Supplemental Questionnaire Response at 23).  Commerce determined that:

> The aluminum sheet exported from China to Turkey in Scenario 2 meets the physical description of the scope of the *Orders* as flat-

rolled aluminum sheet having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length, regardless of width. The finished common alloy aluminum sheet further processed in Turkey and exported from Turkey to the United States in Scenario 2 is also within the scope of the *Orders*. Therefore, the common alloy aluminum sheet in Scenario 2 satisfies the scope requirements that both the aluminum sheet input produced in China and the finished common alloy aluminum sheet further processed in Turkey and exported from Turkey to the United States meet the physical characteristics of the scope of the *Orders*.

*Id*. at 9.

25.    Commerce's *Final Scope Determination* also found that Scenario 2 was not excluded based on the temper of the product. *Id*. Commerce found that the scope of the *Orders* provides a limited exclusion based on temper standards (*i.e.*, certain aluminum can stock with H-19, H-41, H-48, or H-391 temper) and the scope does not provide any additional exclusion based on temper standard or temper-specific product description. *Id*. Commerce, in part, based its determination on temper on Commerce's findings in a separate investigation and subsequent orders of common alloy aluminum sheet from Bahrain, Brazil, Croatia, Egypt, Germany, Greece, India, Indonesia, Italy, Korea, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and Turkey. *Id*. Commerce's *Final Scope Determination* found the plain scope language dispositive and found further analysis of the factors listed in 19 C.F.R. §§ 351.225(k)(1), (k)(2) "unnecessary." *Id*. at 10.

26.    On January 31, 2022, Commerce issued cash deposit instructions to CBP which stated, in part, "{b}ecause both the Chinese-origin common alloy aluminum sheet input and the finished common alloy aluminum sheet re-rolled in Turkey satisfy the description of the scope of the orders, Commerce found this product to be within the scope of the orders." *RE: Affirmative final covered merchandise determination on antidumping and countervailing duty orders on common alloy aluminum sheet from the People's Republic of China (A-570-073, C-570-074),*

Message No. 2031405 (Jan. 31, 2022). Commerce instructed CBP to continue to suspend liquidation of entries of the Chinese-origin common alloy aluminum sheet input re-rolled in Turkey by Turkish producer PMS, exported from Turkey to the U.S., imported by AA Metals, subject to the *China CAAS Orders*. *Id*. at ¶3.

## STATEMENT OF THE CLAIMS

27.     In the following respects, and for the other reasons demonstrated on the record of the administrative proceeding, Commerce's *Final Scope Determination* with respect to Scenario 2 is unsupported by substantial evidence and otherwise not in accordance with law.

### Count I

28.     Plaintiff herein incorporates by reference paragraphs 1 through 27, *supra*, of this complaint.

29.     Commerce improperly determined that the product, as defined in Scenario 2, imported into Turkey by PMS for further processing in Turkey was not a continuous cast coil product.   AA Metals submitted documentation related to the Chinese product in its initial questionnaire at Exhibit 6.  Commerce's supplemental questionnaire did not question the status of the product as continuous cast coil at the time of entry into Turkey.   Rather, Commerce's supplemental questionnaire asked multiple questions as to justify how the continuous cast coil is primary unwrought aluminum and therefore is non-subject merchandise.  In instances where there is a deficiency in the information of record, Commerce is required to let interested parties know that Commerce deems the information deficient and allow the party to place information on the record to correct the deficiency, particularly in instances, as is the case here, where an interested party has provided Commerce with voluminous information and actively participated throughout the proceeding.

30.     Accordingly, Commerce's determination that the product subject to Scenario 2 is not continuous cast coil is not supported by substantial evidence and not in accordance with law.

## Count II

31.     Plaintiff herein incorporates by reference paragraphs 1 through 30, *supra*, of this complaint.

32.     With respect to Scenario 2, Commerce failed to issue a determination as to whether continuous cast coil was subject merchandise.  Commerce's failure to issue a determination with respect to continuous cast coil is not supported by substantial evidence and is contrary to law.

## Count II

33.     Plaintiff herein incorporates by reference paragraphs 1 through 32, *supra*, of this complaint.

34.     Commerce misapplied the primary criteria for determining scope (*e.g.*, the Department's description of the scope in the *Orders*, the petition, the decisions of the Department and the ITC).  19 C.F.R. § 351.225(k)(1).  Commerce's determination failed to consider the plain language of the scope.  Therefore, Commerce's *Final Scope Determination* was arbitrary and capricious and not based upon substantial evidence of record or otherwise in accordance with law.

35.     In making a scope determination, Commerce must first analyze whether the scope language unambiguously indicates that the merchandise in question is within the scope of the order.  If the answer is no, then Commerce must determine whether it can make a ruling based upon the scope ruling request and the criteria listed in 19 C.F.R. § 351.225(k)(1), namely the description of the merchandise in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.  If these factors are not

dispositive, then Commerce must consider additional criteria set forth in 19 C.F.R. § 351.225(k)(2). *See* 19 C.F.R. § 351.225(d), (e), (k).

36.     However, "[w]hile the petition, factual findings, legal conclusions, and preliminary orders can aid in the analysis, they cannot substitute for the language of the order itself, which remains the 'cornerstone' in any scope determination." *Duferco Steel, Inc. v. United States,* 296 F.3d 2087, 2097 (Fed. Cir. 2002).

37.     In its *Final Scope Determination*, Commerce found that "the scope of the *Orders* does not provide any additional exclusion based on temper standard or temper-specific product description." *Final Scope Determination* at 9.  However, aluminum can stock, having a H-19, H-41, H-48, or H-391 temper, would have been deemed subject merchandise but-for the specific exclusion set forth in the scope language.  Commerce's determination to only exclude tempers meeting the aluminum can stock exclusion is contrary to the plain language of the *Orders* and unlawfully expands the scope of the *Orders*.  Moreover, in its improper failure to analyze the (k)(1) factors in this case, Commerce unlawfully rejected substantial evidence from the original investigation, including the descriptions of the merchandise contained in the petition, the initial investigation, and the ITC's injury determinations that certain tempers were not subject to the underlying investigation.

38.     Accordingly, Commerce's *Final Scope Determination* is arbitrary and capricious and not supported by substantial evidence.

## Count III

39.     Plaintiff herein incorporates by reference paragraphs 1 through 38, *supra*, of this complaint.

40.     With respect to Scenario 2, Commerce failed to consider the criteria set forth in 19 C.F.R. § 351.225(k)(1), deeming such consideration "unnecessary."  Commerce's failure to analyze factors set forth in 19 C.F.R. § 351.225(k)(1) when considering whether the scope of the *China CAAS Orders* includes Scenario 2 merchandise is not supported by substantial evidence and is contrary to law.

## Count IV

41.     Plaintiff herein incorporates by reference paragraphs 1 through 40, *supra*, of this complaint.

42.     In the *Final Scope Determination*, Commerce expanded the scope of the *China CAAS Orders* to include merchandise not considered during the underlying investigation by Commerce and the ITC.  Commerce improperly included certain temper product under the scope of the *Orders*.  During the injury investigation, the ITC differentiated between re-roll and subject merchandise during its injury determination.  *Common Alloy Aluminum Sheet from China*, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final), USITC Pub. 4861 (Jan. 2019) at I-14 to I-18.  In the ITC's description of the manufacturing process of subject merchandise, re-roll stock is the coiled aluminum alloy sheet resulting from the melting and refining and casting processes, before the sheet is further manufactured into CAAS products through the flat-rolling process and additional processes, including heat-treating, annealing, and/or finishing.  Importantly, the ITC specifically noted that the pricing analysis for its final determination expressly excluded a certain temper.  *Id.*; *see also Common Alloy Aluminum Sheet from China*, Inv. Nos. 701-TA-591 and 731-TA-1399 (Prelim.), USITC Pub. 4757 (Jan. 2018).

43.     The Department cannot unlawfully expand the scope of the *China CAAS Orders* to include merchandise not considered during the underlying investigation; inclusion of a certain

14

temper product under the scope of the *China CAAS Orders* would constitute such an unlawful expansion.

44.    Accordingly, Commerce's expansion of the scope of the *China CAAS Orders* is not in accordance with law.

## Count V

45.    Plaintiff herein incorporates by reference paragraphs 1 through 44, *supra*, of this complaint.

46.    In the *Final Scope Determination*, Commerce relies on new factual information not of record in the proceeding.  Specifically, Commerce, in part, based its determination on temper based on Commerce's findings in a separate investigation and subsequent orders of common alloy aluminum sheet from Bahrain, Brazil, Croatia, Egypt, Germany, Greece, India, Indonesia, Italy, Korea, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and Turkey.  *Final Scope Determination* at 9.  AA Metals was not able to address this factual information or provide information and comment to rebut, clarify or correct this information during the proceeding pursuant to 19 C.F.R. §§ 351.301, 351.102(b)(21)(iv).

47.    Accordingly, Commerce's reliance on new factual information to support its *Final Scope Determination* is arbitrary and capricious and otherwise not in accordance with law.

## Count VI

48.    Plaintiff herein incorporates by reference paragraphs 1 through 47, *supra*, of this complaint.

49.    In the *Final Scope Determination*, Commerce, in part, based its determination on temper on Commerce's findings in a separate investigation and subsequent orders of common

15

alloy aluminum sheet from Bahrain, Brazil, Croatia, Egypt, Germany, Greece, India, Indonesia, Italy, Korea, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and Turkey.  Final Scope Determination at 9.  As a result, Commerce's *Final Scope Determination* is based on a different order and separate ITC injury analysis.  Commerce's reliance on a different order and ITC analysis unlawfully expands the scope to include merchandise that was not part of the underlying investigation.

50.     Accordingly, Commerce's reliance on a different order and ITC analysis to support its *Final Scope Determination* is arbitrary and capricious and otherwise not in accordance with law.

## Count VII

51.     Plaintiff herein incorporates by reference paragraphs 1 through 50, *supra*, of this complaint.

52.     Commerce's *Final Scope Determination* determined that the finished common alloy aluminum sheet further processed in Turkey and exported from Turkey to the United States is subject to the *CAAS China Orders*.  Commerce failed to address the substantial transformation analysis in its *Final Scope Determination*.  Commerce's *Final Scope Determination* is inconsistent and directly conflicts with its established practices and determinations that both the hot and cold rolling processes result in a substantial transformation.  Consistent with Commerce's previous determinations, PMS substantially transformed the Chinese product to become a product of Turkey prior to import into the United States.

53.     Accordingly, Commerce's *Final Scope Determination* is not based on substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

16

Court No. 22-00051

WHEREFORE, Plaintiff AA Metals, Inc. requests that this Court:

(1) Hold that Commerce's *Final Scope Determination* was not supported by substantial evidence and otherwise not in accordance with law;

(2) Remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision; and

(3) Grant such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

/s/ Kristen S. Smith
Kristen S. Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Attorneys for AA Metals, Inc.*

Dated: February 22, 2022